Filed 12/22/23  P. v. Burnell CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOE BABY BURNELL,<br><br>    Defendant and Appellant. | G062257<br><br>(Super. Ct. No. 02WF1367)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Kazuharu Makino, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

In 2003, a jury convicted Joe Baby Burnell of attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a); count 1); second degree robbery (§§ 211, 212.5, subd. (c), & 213, subd. (a)(2); count 2), unlawful taking or driving a vehicle (Veh. Code, § 10851, subd. (a); count 3), receiving stolen property (§ 496, subd. (a); count 4), mayhem (§ 203; as lesser included offense of count 6), and street terrorism (§ 186.22, subd. (a); count 9, renumbered as count 7).  The jury found as to count 1 that Burnell committed the attempted murder with premeditation and deliberation.  The jury also found as to counts 1, 2, and 6 that Burnell personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and further found a gang-benefit enhancement (§ 186.22, subd. (b)(1)) applied to counts 1, 2, 3, 4, and 6.  On counts 2 and 6, as Burnell emphasizes here, the jury found a further penalty enhancement applied, namely for gang-related firearm offenses when a principal discharges a firearm and the offense is committed for the benefit of a criminal street gang.  (§ 12022.53, subds. (d), (e)(1).) Before sentencing, Burnell admitted allegations he had served a prior prison term (§ 667.5, subd. (b)) and was previously convicted of a serious felony (§ 667, subd. (a)(1)) and two strike offenses (§ 667, subds. (d) & (e)(2)).

The trial court sentenced Burnell to an indeterminate prison term consisting of a base life term of seven years plus 25 years to life for the firearm enhancement on count 1, to which the court added an enhanced consecutive 29-years-to-life prison term for count 3 and a consecutive 25-years-to-life prison term for street terrorism, and, further, the prior serious felony enhancement earned Burnell five more years.  The court entered a stay under section 654 on the remaining counts and enhancements.

Burnell appealed and this court affirmed his conviction and sentence. (*People v. Burnell* (Aug. 19, 2005, G032634) [nonpub. opn.].)

---

[1]     All statutory references are to the Penal Code unless designated otherwise.

2

In 2022, Burnell filed a petition under section 1170.95 (subsequently renumbered section 1172.6) in which he contended he could not now be convicted of attempted murder following changes to the law of murder in sections 188 and 189. The prosecution filed an opposition that included attachments: (1) the amended felony complaint against Burnell; (2) the abstract of judgment for Burnell's conviction; (3) the jury's verdict forms; (4) the jury instructions; (5) the trial court's register of actions for the proceedings against Burnell and his codefendants, Marquis Iben Alashanti and DeAngelo Sema Clay; and (6) the parties' closing arguments.

The register entries showed the jury convicted Alashanti on several counts, but it found no firearm enhancements applied and acquitted him of attempted murder. The register also showed the court accepted Clay's guilty plea to count 2, i.e., the robbery, and found true on that count both a gang-benefit enhancement (§ 186.22, subd. (b)(1)), and one for use of a firearm in the commission of the offense (§ 12022, subd. (a)(1)).

The trial court appointed counsel to represent Burnell in this matter, and counsel filed a brief in support of Burnell's petition. Counsel pointed out that, among other theories of attempted murder, the jury was instructed on the natural and probable consequences doctrine as a basis for liability.

After a hearing, the trial court denied the resentencing petition. The court said this in its written decision: "Without reviewing the facts of the case, a review of the record of conviction shows that the petitioner is ineligible for relief as a matter of law and thus fails to make a prima facie showing for relief. Based on the jury instructions and jury verdicts, the jury found that the petitioner was the actual perpetrator of the attempted murder. The jury instructions concerning vicarious[] liability applied to the co-defendant who the jury did not find guilty of attempted murder. As such, the petitioner is ineligible for resentencing as a matter of law."

3

Burnell appealed the court's denial of his petition; this court appointed him counsel. After conducting her analysis of potential appellate challenges to the trial court's ruling, counsel filed a brief stating she could find "no viable issues." Counsel filed a brief pursuant to the procedures set forth in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) (and consistent with *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738). While not arguing against her client, counsel set forth the history of the case and asked this court to conduct its own independent review of the appellate record, which we have done.

Counsel notified her client of her conclusion and provided him the appellate record, after which Burnell filed a supplemental brief; he also submitted three successive, supplemental documents he labeled as "Addendum[s]" to his brief. Like counsel, we find no arguable appellate issue that could be resolved favorably to Burnell. (See *People v. Johnson* (1981) 123 Cal.App.3d 106, 109 (*Johnson*) [stating standard for "arguable issues," including that counsel need not raise those lacking merit].) We therefore affirm the trial court's ruling.

## FACTS

We summarize the underlying factual background briefly to put the jury's verdict and findings in context; only undisputed facts or those resolved by the jury's verdict and findings bear on our analysis of Burnell's petition. We note that, as Burnell expressly contends in his supplemental brief, it is undisputed "[t]he evidence shows that there was only one firearm used in this case."

An excerpt from our prior opinion provides the relevant backdrop: "James Earhart was the owner and sole employee of a Garden Grove business known as Holly's Coin and Collectibles (Holly's Coin). On June 13, 2002, [Burnell] entered the store and sold some coins to Earhart. As he was leaving, [he] told Earhart he had some more coins and asked if he could bring them back the next day. While [Burnell] was in Holly's

4

Coin, another black man was seen walking the perimeter of the shopping center while . . . another waited for defendant in a silver Toyota.

"At about 4:30 p.m. the next day, [Burnell] returned in a stolen maroon GMC minivan in the company of Marquis Iben Alashanti and DeAngelo Clay. [Burnell] entered Holly's Coin. Alashanti entered a nearby store that had a view of Holly's Coin, but left after observing the store's employee watching television at the rear of the store. After Earhart finished with another customer, [Burnell] approached the counter and laid out three rows of coins. As Earhart began looking at the coins, [Burnell] came around the counter and grabbed Earhart from behind, put a gun to the back of his head, and said 'I'm going to kill you, you mother fucker.' Earhart struggled, but [Burnell] put the gun to Earhart's right temple near the right eye and pulled the trigger. The bullet exited Earhart's left temple near the left eye. Earhart fell to the floor, still alert, but in pain and shock. He pretended he was dead, and felt someone go through his pockets. Earhart heard the sound of the buzzer on the store's security door, heard someone else come into the store, heard whispering, and then heard things being moved around in the direction of a corner safe. When Earhart heard the security door buzzer again, and it became silent in the store, he was able to crawl to the door, unlatch it, and crawl outside where he yelled for help. Earhart lost both eyes, and his senses of smell and taste." (*People v. Burnell*, *supra*, G032634.)

## DISCUSSION

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess., Senate Bill 1437) was enacted to limit the scope of the traditional felony murder rule. As relevant here, it also eliminated the natural and probable consequences (NPC) doctrine as a valid basis to support a murder conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The new legislation abrogated the NPC theory of liability by amending section 188 to preclude imputing an accomplice's malice to the defendant. Instead, the

5

defendant must personally harbor malice aforethought: "Now, '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).)" (*People v. Turner* (2020) 45 Cal.App.5th 428, 433.) Senate Bill 1437 also added section 1170.95 (now renumbered § 1172.6), which created "a special procedural mechanism for those convicted under the former law to seek retroactive relief." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); see § 1172.6, subd. (a).)

Senate Bill No. 775 (2021-2022 Reg. Sess.) subsequently amended former section 1170.95 to expand the scope of potential relief available, including to permit defendants convicted of attempted murder to seek resentencing. (§ 1172.6, subd. (a)(1).)

A prisoner's first step under section 1172.6 is to file a petition that establishes a prima facie basis for relief. One of the requirements for the prima facie showing is that the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189" made effective by Senate Bill 1437. (§ 1172.6, subd. (a)(3).) Burnell alleged as much in his petition, but "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Thus, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.)

The trial court properly denies a petition at the prima facie stage if the record of conviction conclusively establishes the petitioner was convicted on a theory not affected by Senate Bills 1437 or 775. (See, e.g., *People v. Williams* (2022) 86 Cal.App.5th 1244, 1257.) The trial court, "at this preliminary juncture," does "not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

6

Unlike other *Wende* matters, in appeals arising under section 1172.6, we are not required to conduct an independent review of the record to identify issues not raised by counsel or the defendant. (*Delgadillo, supra*, 14 Cal.5th at p. 232.) We nonetheless exercise our discretion under *Delgadillo* to do so here. Based on the jury's findings, we find nothing to support Burnell's claim the trial court erred in denying his petition.

The elements of attempted murder are (1) a "specific intent to kill," which is the equivalent of express malice, and (2) "a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623; see *People v. Smith* (2005) 37 Cal.4th 733, 739 [intent to kill and express malice are "'one and the same'"].)

"[A] petitioner who alleges that he or she could not currently be convicted of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' (§ 1172.6, subd. (a)(3)) puts at issue all elements of the offense under a valid theory." (*People v. Curiel* (2023) __ Cal.5th __ (*Curiel*) [2023 Cal. LEXIS 6622, at *51].) Nevertheless, "relevant jury finding[s]" may be "preclusive in section 1172.6 proceedings." (*Id.* at *32.) The court "may look to the jury's verdicts, and the factual findings they necessarily reflect." (*Id.* at *56.) Such findings can "establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a prima facie case for relief." (*Strong*, *supra*, 13 Cal.5th at p. 710.)

Two jury findings in this case stand out in our de novo review. First, the jury determined by its true finding as to the personal discharge allegation on count 1 that Burnell was the actual shooter who gravely injured Earhart. Second, the jury determined by its premeditation and deliberation finding on count 1 that Burnell intended to kill his victim; in other words, he harbored the express malice necessary for direct liability for attempted murder. The jury based its attempted murder verdict on Burnell's own actions and mental state rather than imputing those of an accomplice to him.

7

Under different circumstances a personal use finding may not be sufficient to establish the defendant's role as the direct perpetrator of a murder or attempted murder. For example, "[i]f two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony murder, even though only one is the actual killer." (*People v. Jones* (2003) 30 Cal.4th 1084, 1120.) But here the trial court did not need to resolve any disputed facts or conflicts in the evidence to rule out this scenario given that, as Burnell concedes, there was only one gun used and the jury determined only Burnell discharged it.

It is also true that, by itself, a personal discharge enhancement under section 12022.53, subdivision (d), "does not establish as a matter of law that a defendant acted with malice aforethought." (*People v. Offley* (2020) 48 Cal.App.5th 588, 597.) "It is therefore insufficient on its own to justify denying a defendant's petition under section [1172.6] at the first stage of review." (*Ibid.*) But once again that issue was resolved against Burnell. The jury, as required by the court's premeditation and deliberation instruction (CALJIC No. 8.67), "f[ou]nd that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation . . . ."

Finding on our de novo review no basis for a challenge to the trial court's ruling, we turn to Burnell's contentions. (See *Delgadillo*, *supra*, 14 Cal.5th at p. 232 ["If the defendant . . . files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented"].)

Burnell contends the trial court "engaged in factfinding" contrary to the Supreme Court's command in *Lewis*, *supra*, 11 Cal.5th 952 by "concluding that the jury found [he] was the actual perpetrator of the attempted murder." To the contrary, the court properly gave effect to the jury's findings to dismiss an unmeritorious petition. (*Curiel*, *supra*, 2023 Cal. LEXIS 6622, at *53-54.)

8

In a related contention in an addendum to his supplemental brief, Burnell argues the trial court "exceeded its authority" by concluding the jury's verdict showed he was the actual perpetrator when the jury instructions included "the now defunct" natural and probable consequences theory as a basis for conviction for attempted murder and "the jury did not specify the theory or theories they relied on to find [him] guilty." We disagree. The jury's findings reflect the jurors found Burnell guilty in count 1 as the actual perpetrator who attempted to kill Earhart.

Burnell argues the court's prohibited factfinding extended to wrongly concluding the jury determined the court's instructions regarding vicarious liability for discharge of a firearm when committing an offense for the benefit of a criminal street gang (§ 12022.53, subds. (d) & (e)(1)) did not apply to him on count 1. The record does not include a verdict form for this enhancement as to Burnell on count 1, though it does include true findings as to Burnell for both this enhancement and separately also a personal discharge (§ 12022.53, subd. (d)) finding for counts 2 and 6. On count 1 as to Burnell, the jury returned a true finding on the personal discharge allegation (§ 12022.53, subd. (d)). It is unclear whether the jury also had the option to find him guilty of the gang-benefit firearm discharge enhancement in section 12022.53, subds. (d) & (e)(1), given the absence of that verdict form in the record.

Burnell argues that the vicarious discharge allegations the jury found true as to him in counts 2 and 6, in conjunction with also finding him guilty of the personal discharge enhancement on those counts and in count 1 means "it may be that the jury cannot [*sic*] decide beyond a reasonable doubt exactly who did what." Again, we disagree. Pieced together, these findings demonstrate unmistakably that the jury found Burnell directly responsible for personal discharge of the weapon, as reflected in its true finding on that allegation in count 1. (§ 12022.53, subd. (d).)

Relying on the language of CALJIC No. 8.66, Burnell argues the jury did not necessarily conclude *he* harbored the intent to kill now necessary for an attempted

9

murder conviction. The instruction stated, with italics suggested by Burnell: "In order to prove attempted murder, each of the following elements must be proved; [¶] 1. A direct but ineffectual act was done by *one person* towards killing another human being; and [¶] 2. *The person* committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

Burnell asserts that his conviction for attempted murder under this language does not put him outside relief under section 1172.6 because it did not require that *he*, as "'the defendant' harbor[ed] the intent to kill, which is required to find a defendant guilty of attempted murder as either the perpetrator or as a direct aider and abettor" rather than on NPC grounds. As discussed, however, the Supreme Court has endorsed turning to "[o]ther aspects of the record, such as additional jury findings," to determine whether the jury has found the requisite "elements of the relevant homicide offense." (*Curiel*, *supra*, 2023 Cal. LEXIS 6622, at *53.) The jury found all the requisite elements, thus "conclusively refut[ing the] petitioner's allegation that he or she could not be convicted of murder under current law." (*Ibid.*)

Finally, in his supplemental brief, Burnell attempts to raise other issues including the sufficiency of the evidence to support Earhart's testimony identifying him as the shooter; a challenge to the reliability of fingerprint evidence based on a purported "significant dispute [that] has emerged . . . within the relevant scientific community"; and an alleged sentencing error in staying a one-year prior prison enhancement.

These challenges all fall well outside the scope of a section 1172.6 petition, and therefore are not cognizable on appeal from the denial of a petition under that statute. As the Supreme Court has stated, "Had the Legislature intended to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing, we expect it would have said so more plainly." (*Strong*, *supra*, 13 Cal.5th at p. 715; see also *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 ["The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims

10

of trial error or attack the sufficiency of the evidence supporting the jury's findings"].) We therefore need not address these contentions.

While finding no arguable issue to raise on Burnell's behalf, his counsel on appeal suggested issues for consideration on our independent review. We have addressed those issues in the course of our discussion above and, like counsel, we conclude the record discloses no issue with "a reasonable potential for success" to challenge the trial court's denial of his resentencing petition. (*Johnson*, *supra*, 123 Cal.App.3d at p. 109.)

## DISPOSITION

The trial court's postjudgment order denying Burnell's section 1172.6 petition is affirmed.


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

11